UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------------------------------
IN RE:

    CLINTON B. HENDERSON and                CASE NO. 08-60255
    RENETA HENDERSON

                          Debtors                    Chapter 7
--------------------------------------------------------
APPEARANCES:

PETER A. ORVILLE, ESQ.
*Attorney for Debtors*
30 Riverside Drive
Binghamton, New York 13905

RONALD J. SCHEIDELMAN
KHALIDA SCHEIDELMAN
*Pro Se*
Turris ebernea
3 Greene Street
Oxford, NY 13830

Hon. Diane Davis, U.S. Bankruptcy Judge

**MEMORANDUM-DECISION, FINDINGS OF FACT,
CONCLUSIONS OF LAW AND ORDER**

      Presently under consideration by the Court is a motion filed on May 4, 2009, by Khalida and Ronald Scheidelman ("Dr. Scheidelman" and collectively, "the Scheidelmans"), seeking an order disqualifying the undersigned from hearing various matters in this case pursuant to 28 U.S.C. §455(a) and (b)(1). The motion was heard by the Court at its regular motion term in Binghamton, New York, on May 19, 2009. After listening to the arguments of Dr. Scheidelman, the Court indicated that it would issue a written decision.

**JURISDICTIONAL STATEMENT**

2

The Court has core jurisdiction over the parties and subject matter of this contested matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b).

**FACTS**

On February 8, 2008, Clinton and Renata Henderson (the "Debtors") filed a petition pursuant to Chapter 13 of the U.S. Bankruptcy Code, 11 U.S.C. §§ 101-1532 ("Code"). The last day to file a complaint objecting to dischargeability in the Chapter 13 was May 5, 2008. The Scheidelmans filed a demand for discovery on April 14, 2008 and filed a motion on May 28, 2008, seeking to compel discovery (Dkt. No. 20).[1] The Honorable Stephen D. Gerling signed an Order on July 14, 2008, requiring the Debtors to comply with the Scheidelmans' discovery demand within 30 days. On July 24, 2008, the Debtors filed a notice of conversion to Chapter 7. A notice was sent to all creditors indicating that the last day to oppose the Debtors' discharge or to object to dischargeability was November 7, 2008.

On October 6, 2008, the Scheidelmans again filed a motion to compel discovery and also requested sanctions for what they alleged to be the Debtors failure to comply with the Court's prior Order of July 14, 2008. Judge Gerling signed an Order on October 23, 2008, awarding sanctions against Debtors' counsel of $500. In the interim, on October 21, 2008, the Scheidelmans sought

---

[1] At the time, the Scheidelmans, who are representing themselves on a *pro se* basis, had not filed a complaint pursuant to Code § 523(a) or sought an extension file such a complaint beyond the May 5, 2008 deadline. It appears that some of the discovery they requested may have included issues involving a claim the Debtors asserted against the Scheidelmans in the amount of $29,000, which the Chapter 7 Trustee ultimately was authorized to abandon by Order, dated February 10, 2009 (Dkt. No. 145).

3

their first extension in the converted Chapter 7 to commence an adversary proceeding, indicating that they needed to complete discovery and "at least obtain competent legal advice to determine whether or not filing Adversary Proceeding is advisably [sic], and if so, under what section of USC 11 to file and render assistance in doing so." (Dkt. No. 48). The Debtors agreed to a 30 day extension for filing a complaint, and on December 8, 2008, Judge Gerling signed an Order requiring the Debtors to appear for a 2004 examination (Dkt. No. 84) and granting the Scheidelmans an extension of 30 days from the completion of the 2004 examination to file a complaint (Dkt. No. 83). In addition, Judge Gerling signed an Order on December 24, 2008, granting both the Chapter 7 trustee and the United States Trustee an extension from November 7, 2008, to February 7, 2009, to file a complaint objecting to the Debtors' discharge (Dkt. No. 88).

On December 11, 2008, the Chapter 13 Trustee had filed his Final Report and Account (Dkt. No. 85). Contained as part of the Summary of the Trustee's Final Account is the statement:

> You are further notified that unless a written application for a hearing is filed on or before 30 days from the date of this notice and summary, the estate will be closed and the trustee and the surety on the trustee's bond will be released.

On January 5, 2009, the Scheidelmans filed a motion requesting a hearing on the Chapter 13 Trustee's Final Report. Judge Gerling signed an Order on January 29, 2009, giving the Chapter 13 Trustee 30 days in which to notice a hearing on said Final Report. On February 24, 2009, the Chapter 13 Trustee filed the required notice of hearing for approval of the Final Report (Dkt. No. 154). Said hearing was scheduled for April 7, 2009. On March 4, 2009, the Scheidelmans asserted that the Chapter 13 Trustee had ignored Judge Gerling's Order of January 29, 2009, on the grounds that the Chapter 13 Trustee was seeking approval of the Final Report without a hearing. (Dkt. No. 156). The Chapter 13 Trustee filed an amended notice on March 5, 2009, adjourning the hearing

4

to April 21, 2009 (Dkt. No. 158). On March 6, 2009, the Chapter 13 Trustee filed a Supplemental Affirmation in support of his motion seeking approval of the Final Report in which he indicated that in correspondence, as well as a conversation with Dr. Scheidelman, Dr. Scheidelman had been "unable to quantify a basis upon which he objects to the Chapter 13 Trustee's Final Report and Accounting" and that the Chapter 13 Trustee intended to file an application pursuant to Rule 9011 of the Federal Rules of Bankruptcy Procedure ("Fed.R.Bankr.P.") to sanction Dr. Scheidelman's conduct (Dkt. No. 160).

On March 18, 2009, the Honorable Robert E. Littlefield, Jr.[2] signed an Order at the request of the Scheidelmans further extending the deadline for commencing an adversary proceeding to April 21, 2009. The Order was amended on March 24, 2009, to provide that any further request to extend the deadline had to be made by motion returnable by April 21, 2009 (Dkt. No. 170). On April 3, 2009, the Scheidelmans filed a motion asking for a continuance of the 2004 examination[3] and a further extension for commencing an adversary proceeding to at least 20 days after the Court rules on the Scheidelmans' objection to the Debtors claim of a homestead exemption.[4] The motion was heard on April 21, 2009, and on May 8, 2009, the Court signed an Order denying the

---

[2] Judge Gerling retired as U.S. Bankruptcy Judge for the Northern District of New York on February 27, 2009. Judge Littlefield agreed to cover the motion calendars in Binghamton, New York, during the month of March 2009.

[3] Apparently, a 2004 examination had been conducted on March 9, 2009.

[4] Judge Gerling had granted the Scheidelmans an extension to January 27, 2009, to object to the Debtors' homestead exemption. On March 4, 2009, Dr. Scheidelman filed an amended motion reiterating his objection to the exemption. At a hearing on the objection on March 17, 2009, Judge Littlefield gave the Scheidelmans until May 22, 2009, to submit a memorandum of law on the issue and allowed the Debtors until June 19, 2009 to respond. At that hearing, Judge Littlefield suggested that the Scheidelmans consider obtaining legal counsel in connection with their objection, as well as with respect to any adversary proceeding they were considering commencing.

5

continuation of the 2004 examination and granting the Scheidelmans an extension for the commencement of an adversary proceeding to May 19, 2009 (Dkt. No. 186). Said Order was amended on May 14, 2009, giving the Scheidelmans until May 21, 2009, to file their complaint, which they did on that date. In the interim, the Scheidelmans filed the motion now under consideration seeking recusal of the undersigned.[5]

### DISCUSSION

Fed.R.Bankr.P. 5004(a) provides that disqualification of a bankruptcy judge is governed by 28 U.S.C. § 455. Under 28 U.S.C. § 455(a), a judge is required to disqualify himself/herself in "any proceeding in which his/her impartiality might reasonably be questioned." In this regard, the appearance of impropriety is to be determined "not by considering what a straw poll of the only partly informed man-in-the street would show - but by examining the record facts and the law, and then deciding whether a reasonable person knowing and understanding all the relevant facts would recuse the judge." *In re Drexel Burnham Lambert, Inc.*, 861 F.2d 1307, 1313 (2d Cir. 1988), *reh'g denied*, 869 F.2d 116 (2d Cir. 1989). Under 28 U.S.C. § 455(b)(1), a judge is also required to disqualify himself/herself "[w]here he/she has a personal bias or prejudice concerning a party . . . ." "A judge is presumed to be impartial, and 'the party seeking disqualification bears the substantial burden of proving otherwise.'" *American Prairie Const. Co. v. Hoich*, 560 F.3d 780, 790 (8th Cir. 2009) (citation omitted); *see also In re Wilborn*; 401 B.R. 848, 860 (Bankr. S.D.Tex. 2009) (noting

---

[5] In their complaint, the Scheidelmans have requested that no further action be taken on the adversary proceeding "until a substitute judge . . . is made." *See* Complaint at ¶ 131.

6

that the burden of proving that a judge is not qualified is clear and convincing evidence). "Litigants are entitled to an unbiased judge; not to a judge of their choosing." *Drexel Burnham*, 861 F.2d at 1312.

"'[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep seated favoritism or antagonism that would make fair judgment impossible." *Id.* (citation omitted).

> The substantive standard for recusal [under § 455(b)(1)] is whether a reasonable person, knowing all the facts, would conclude that the court's impartiality might reasonably be questioned. (citations omitted). The standard under § 455(a) is "whether an objective, disinterested observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt that justice would be done in the case."

*Verone v. Taconic Telephone Corp.,* 826 F.Supp. 632, 634 (N.D.N.Y. 1993) (citation omitted); *see also U.S. v. Bayless,* 201 F.3d 116, 126 (2d Cir. 2000) (noting that "Section 455(a) complements § 455(b), which addresses the problem of actual bias by mandating recusal in certain specific circumstances where partiality is presumed"[6]).

As discussed by the concurring justices in *Liteky v. U.S.*, 510 U.S. 540 (1994), § 455(a)

> is triggered by an attitude or state of mind so resistant to fair and dispassionate inquiry as to cause a party, the public, or a reviewing court to have reasonable grounds to question the neutral and objective character of a judge's rulings or findings. . . . Thus, under § 455(a) a judge should be disqualified only if it appears that he or she harbors an aversion, hostility or disposition of a kind that a fair-minded person could not set aside when judging the dispute.

*Id.* at 557-8.

---

[6] For example, § 455(b)(5) requires that a judge disqualify himself/herself if he or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person is a party to the proceeding or is acting as a lawyer in the proceeding, etc.

With respect to § 455(a), the allegations of prejudice or bias must "concern extra-judicial conduct, i.e. that is, that they must relate to something other than the judge's conduct in the case at hand. If not, they do not form a basis for recusal." *In re Shugrue*, 221 B.R. 394, 397 (Bankr. W.D.Tex. 1998). Adverse rulings alone almost never constitute a basis for a recusal motion pursuant to 28 U.S.C. § 455(a) or (b)(1). *Taconic Telephone Corp.*, 826 F.Supp. at 635. However, there may be a basis for recusal should it be established that the judge has displayed "a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky*, 510 U.S. at 555; *In re Hutter*, 221 B.R. 632, 636 (Bankr. D.Conn. 1998). As pointed out by the undersigned at the hearing on May 21, 2009, adverse rulings may be proper grounds for appeal, but not for recusal. *Wilborn*, 401 B.R. at 860-61.

In the matter presently before this Court, the Court finds the allegations by the Scheidelmans are entirely lacking in support and lack any objective basis for finding bias or prejudice. The adverse rulings of which Dr. Scheidelman complains are the result of the Court's weighing the merits of each motion and are not influenced by any bias that would justify recusal. The Court does not believe that any reasonable person, fully familiar with the facts and circumstances of the case and the proceedings that have occurred in the month since the undersigned took the bench, including the rulings issued at the hearing on April 21, 2009, represent a basis for a finding of bias or prejudice pursuant to 28 U.S.C. § 455(a). Nor have the Scheidelmans alleged any extra-judicial conduct that might serve as a basis for recusal pursuant to 28 U.S.C. § 455(b)(1).

This case has been pending for over a year. The Scheidelmans obtained previously obtained favorable rulings in their request for a 2004 examination of the Debtors and their request for sanctions when the Debtors failed to comply with their discovery requests, as ordered by Judge

8

Gerling. They also were granted extensions on two separate occasions to file a complaint objecting to the Debtors' discharge or to the dischargeability of their alleged debt before appearing before the undersigned.

Now in support of their motion for recusal, the Scheidelmans find fault with a number of the Court's recent actions, as well as what they view as its failure to act. For example, they allege that the undersigned Court ignored Judge Gerling's Order of January 29, 2009, which required that the Chapter 13 Trustee notice his Final Report for a hearing within 30 days. A review of the docket in the case indicates that the Chapter 13 Trustee filed a motion on February 24, 2009, seeking approval of the Final Report. It was initially noticed for a hearing on April 7, 2009 and subsequently rescheduled to be heard on April 21, 2009. At the hearing on April 21, 2009, the Court approved the Final Report based on the fact that there had been no plan confirmed prior to the case being converted to Chapter 7.

The Court recognizes that the Scheidelmans do not have the legal background to understand the process and the role of the Chapter 13 trustee when a case is converted from Chapter 13 to Chapter 7 prior to the confirmation of a plan. Nor do they understand, apparently, that the Chapter 13 Trustee was in compliance with Judge Gerling's January 29, 2009, when he filed his notice on February 24, 2009, indicating that the Final Report was to be considered at a hearing originally scheduled for April 7, 2009, and subsequently rescheduled for April 21, 2009. Judge Gerling's Order of January 29, 2009, did not require there to be a separate evidentiary hearing on the Final Report. It merely required that there be notice of a hearing at which the Court would hear any objections that might be filed. Said hearing occurred on April 21, 2009.

The undersigned explained to Dr. Scheidelman that the Chapter 13 Trustee's Final Report

was basically ministerial and represented a "changing of the guard" as it were, with the monies paid to the Chapter 13 Trustee being turned over to the Debtors under Code § 1326. Since there was no order confirming the Debtors' plan at the time the case was converted, and since the funds received by the Chapter 13 Trustee represented postpetition earnings, there was no need for the Trustee to examine the debts listed in the Debtors' schedules or the proofs of claim that were filed in the case prior to submitting his Final Report.

At the hearing on May 19, 2009, Dr. Scheidelman took issue with the fact that neither the Court nor the Chapter 13 Trustee compelled the Debtors to amend their schedules to reflect a claim of the New York State Workers Compensation Board of $62,657. In this regard, Dr. Scheidelman suggests in his motion that "J. Davis appears to condone Mr. Champion being an accessory to the debtors' fraud with respect to the $62,657.00." *See* Recusal Motion at 4, ¶ 5.

A review of the Debtors' schedules reveals the they did list the New York State Workers Compensation Board as being owed a general unsecured debt of $348.67. New York State Workers Compensation Board received notice of the Debtors' case and filed a proof of claim in the case on February 22, 2008, in the amount of $62,657. As the undersigned explained to Dr. Scheidelman, pursuant to Code § 502(a), a proof of claim that is filed is deemed allowed unless a party in interest objects. Thus, there was no need for the Debtors, while in the Chapter 13, to have amended their schedules, and nothing in the Code required the Court to compel such an amendment, despite the fact that the Debtors apparently believed at the time they filed their petition that they only owed $348.67.

The Scheidelmans also took exception to being told in a letter from the Chapter 13 Trustee that no further action was going to be taken with respect to the proof of claim they had filed since

10

the Scheidelmans were representing themselves. The Scheidelmans interpreted this to mean that the Chapter 13 Trustee was indicating that they had to be represented by an attorney in order for him to give consideration to their rights. The Court has reviewed the March 30, 2009 letter referenced by the Scheidelmans and finds that it simply states that the Chapter 13 Trustee had no authority to amend the Scheidelmans' proof of claim, and since they were representing themselves, "it is up to them to take care of that." Arguably if they were represented by counsel, it would have been something that their attorney would have done for them. There is nothing in the letter that demonstrated any prejudice against the Scheidelmans.

The Scheidelmans also suggest that the Court had extrajudicial communication with the Debtors' counsel, stating that

> [t]his is not mere conjecture as J. Davis admitted in the oral transcript of the hearing in question, "I've had an opportunity to look at the transcript [from the 2004 Examination]. There's quite a bit of information in that." For J. Davis to have access to the transcripts necessitated extrajudicial communication that the pro se creditors were neither previously informed or involved.

*Id.* at 3.

The Court has reviewed the record of the hearing held on April 21, 2009. Dr. Scheidelman, in the Recusal Motion, correctly states what was said by the Court on the record, with the exception of the bracketed reference to "the 2004 Examination." At the hearing on May 19, 2009, the Court acknowledged having reviewed approximately fourteen pages of the transcript of the 2004 examination conducted on March 9, 2009, that were provided by both the Scheidelmans and Debtors' counsel that were attached as exhibits to Docket No. 173 and Docket No. 176. At the hearing, the Court clarified that those are the only pages of the transcript of the 2004 examination that it reviewed. The comment that "[t]here's quite a bit of information in that" may have been

based on what appeared to be over 75 pages of testimony at the 2004 examination.[7] There is also the possibility that the Court was actually referring to the Court's review of the extensive docket entries in the case and the record of the hearings that had taken place over the past year.

Dr. Scheidelman also expressed concerns about the Court's refusal to continue the 2004 examination held on March 9, 2009. According to him, the examination was cut short when the police officer had to lock up the courthouse where it was being conducted. Dr. Scheidelman admitted to having stated "That's all the questions I have at this time." However, at the hearing held on April 21, 2009, Dr. Scheidelman indicated that had he been an attorney, he would have been more explicit in expressing his intention that the examination be continued to another day. As the undersigned explained to the Scheidelmans on April 21, 2009, when it denied their motion for the continuation of their 2004 examination of the Debtors, they would be afforded additional discovery by means of a scheduling order once a complaint had been filed and issue was joined.

The Scheidelmans apparent lack of understanding on these procedural issues as *pro se* creditors has caused not only this judge but also Judge Gerling and Judge Littlefield to suggest to them that they might want to consider retaining legal counsel. At the hearing on May 19, 2009, Dr. Scheidelman acknowledged the suggestions of both Judge Gerling and Judge Littlefield. He took exception to this Court's recommendation that he and his wife obtained legal counsel, finding it "oppressive" because of what he viewed as the Court's "demand" that he retain an attorney. He explained that he could not afford even to pay an attorney $2,000, which he had been quoted for possible services.

---

[7] At the hearing on May 19, 2009, Dr. Scheidelman indicated that it was actually 100 pages in length.

12

Certainly, it was not the intent of the undersigned to make any demand on the Scheidelmans to obtain legal counsel as a prerequisite for their appearing in this Court. As was explained to them at the hearing on May 19, 2009, the Court was only concerned that their interests be protected. It is certainly their legal right to appear in this Court *pro se*. However, this Court is prohibited from offering legal advice should they choose to appear before it without the benefit of legal representation.

However, as noted by one court,

> [a]s every Court knows, many of these typical *pro se* procedural and tangential motions and requests would never be made if the *pro se* litigant was represented by and required to pay counsel for pursuing them. As a result, the Court often is required to make many more decisions in a case where there is a litigious *pro se* litigant than if all of the parties were represented. When the Court fails to grant that litigious *pro se* litigant the relief they have requested, rather than fully analyzing the merits of the request and the actual decision of the Court, they often attribute their lack of success to the Court being biased or prejudiced.

*In re Delano*, Case No. 04-20280, 2004 WL 3255239, at *2-3 (Bankr. W.D.N.Y. Nov. 10, 2004).

The Court is of the opinion that it has provided the Scheidelmans with their day in court and has allowed them great leeway in expressing their concerns. However, as frustrated as they may be with having to address their grievances in the context of the Debtors' bankruptcy, the Court's rulings have been made based on the law and the facts of this case, and not based on any antagonism towards the Scheidelmans or favoritism towards either of the trustees, the Debtors or their counsel that would make fair judgment impossible. The Court does not believe that a reasonable person, after examining the record facts in the case and the law, would conclude that the Scheidelmans have established a basis for this judge to recuse herself.

Based on the foregoing, it is hereby

13

ORDERED that the motion of the Scheidelmans seeking recusal pursuant to 28 U.S.C. § 455(a) and (b)(1) is denied.

Dated at Utica, New York

this 27th day of May 2009

        /s/ *Diane Davis*
       DIANE DAVIS
       U.S. Bankruptcy Judge