UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------------------------------
IN RE:

     CLINTON B. HENDERSON and          CASE NO. 08-60255
     RENATA HENDERSON

                      Debtors          Chapter 7
--------------------------------------------------------
APPEARANCES:

PETER A. ORVILLE, ESQ.
*Attorney for Debtors*
30 Riverside Drive
Binghamton, New York 13905

RONALD J. SCHEIDELMAN
KHALIDA SCHEIDELMAN
*Pro Se*
Turris ebernea
3 Greene Street
Oxford, NY 13830


Hon. Diane Davis, U.S. Bankruptcy Judge


**MEMORANDUM-DECISION, FINDINGS OF FACT,
CONCLUSIONS OF LAW AND ORDER**

     Presently under consideration by the Court is a motion filed on January 27, 2009, by Ronald

J. Scheidelman ("Dr. Scheidelman") and Khalida Scheidelman (collectively, the "Scheidelmans")

captioned "Motion to Sustain Objections to Homestead Exemptions" in the case of Clinton B. and

Renata Henderson (collectively, the "Debtors").[1]  An Amended Motion was filed on March 4, 2009

(Dkt. No. 159).  Opposition to the Amended Motion was filed by the Debtors on March 12, 2009

---

[1]  On January 5, 2009, the Scheidelmans filed a motion seeking an extension to file an objection to the Debtors' homestead exemption.  At a hearing held on January 20, 2009, the Court agreed to extend the deadline from January 7, 2009, to January 27, 2009.  The Order actually granting the relief was signed on January 29, 2009 (Dkt. No. 134).

(Dkt. No. 162).

The Court heard argument on the Amended Motion on March 17, 2009, at its regular motion term in Binghamton, New York.  The Court requested that the parties brief the issue.  The Scheidelmans were given until May 22, 2009, to file their brief.  The Debtors were given until June 24, 2009, to respond.[2]  By letter, dated June 15, 2009, the Court agreed to allow the Scheidelmans until July 22, 2009 to reply to the Debtors' response.[3]  The matter was taken under submission on July 22, 2009.`

## JURISDICTIONAL STATEMENT

The Court has core jurisdiction of the parties and subject matter of this contested matter pursuant to 28 U.S.C. § 1334, 157(a), (b)(1), and (b)(2)(B).[4]

---

[2]  The Debtors were originally to have responded by June 19, 2009, in order for the Court to issue a decision from the bench on July 2, 2009.  The date for Debtors' response was extended by the Court to June 24, 2009, in a letter dated June 19, 2009, in which the Court granted the Scheidelman's request that the matter be adjourned from July 2, 2009 to the Court's motion term scheduled to be held on August 6, 2009, in Binghamton.

[3]  In their Reply, filed on July 21, 2009 (Dkt. No. 218), the Scheidelmans take exception to the Debtors' reference to the Scheidelmans' objection as a "motion."  *See* Reply at ¶¶ 6(d-g).  However, the original documents (Dkt. Nos. 127 and 159) filed by the Scheidelmans, to which the Debtors have objected, are clearly captioned as "motions" by the Scheidelmans.

[4]  On May 27, 2009, the Court issued a Memorandum-Decision, Findings of Fact, Conclusions of Law and Order denying the Scheidelmans motion seek the undersigned's recusal from the case.  The Scheidelmans filed a Notice of Appeal on June 8, 2009, and requested that U.S. District Court for the Northern District of New York stay proceedings in the case pending the appeal.  By Decision and Order, dated June 11, 2009, the Honorable David N. Hurd, U.S. District Judge, denied their request (Dkt. No. 207).  Accordingly, the Court continues to have jurisdiction over the case and this contested matter.

**FACTS**

The Debtors filed a voluntary petition pursuant to Chapter 13 of the U.S. Bankruptcy Code, 11 U.S.C. §§ 101-1532 ("Code") on February 8, 2008.  The case was converted to Chapter 7 on July 24, 2008.  On Schedule C, attached to their Petition, the Debtors claim a $100,000 homestead exemption in their residence located in Sidney, New York (the "Residence").  According to Schedule A, the residence has a value of $59,000 and is subject to a mortgage held by NBT Bank N.A. of $29,000.[5]

Dr. Scheidelman was listed as creditor on a "business debt" in the amount of $51,000.  *See* Schedule F, filed with the Petition.  Debtors also list an executory contract with Dr. Scheidelman for "construction of addition to home."[6]  *See* Schedule G.  On Schedule D of the Petition, the Debtors listed four secured claims, including that held by NBT.  In addition, they listed a claim of Video Entertainment Plus, as well as a claim of Daniel Kurtz ("Kurtz") in the amount of $42,000, and a claim of Reuben Fisher ("Fisher") in the amount of $7,500. The Debtors amended Schedule F on May 1, 2008, to add Mrs. Scheidelman as an unsecured creditor with a claim of "0."

On October 31, 2008, the Scheidelmans filed a motion to strike the secured claims of Fisher and Kurtz (Dkt. No. 59).  The Debtors filed a response on November 14, 2008, indicating their intent to amend their schedules based on the assertion that "[i]t turns out that no security interest was ever filed against this claimed asset," namely the balance allegedly owed by the Scheidelmans for construction services.  Debtors indicated that they "have amended their schedules to properly reflect

---

[5]  NBT Bank N.A. filed a proof of claim on March 21, 2008, in the amount of $31,933.85.

[6]  According to Schedule I, Mr. Henderson is self-employed, apparently as a contractor.

Case 08-60255-6-dd    Doc 221    Filed 08/07/09    Entered 08/07/09 14:21:34    Desc Main
Document    Page 4 of 12

4

that this $29,000 claim against the Scheidelmans is not secured by any claims." (Dkt. No. 73). The

Debtors actually filed their amended schedules on November 19, 2008. Fisher was listed with an

unsecured claim of $36,500 and Kurtz was listed with an unsecured claim of $42,000. *See* Amended

Schedule F (Dkt. No. 77). As a result, the Scheidelmans' motion to strike the two alleged secured

claims was marked off the Court's calendar for November 20, 2008.

## ARGUMENTS

The Scheidelmans, appearing *pro se*, set forth a variety of allegations in support of their

objection to the Debtors' homestead exemption. A number of those allegations are the subject of

a pending adversary proceeding commenced by the Scheidelmans pursuant to Code § 727(a)(3) and

(4) and Code § 523(a)(2), (4) and (6), including allegations of criminal activity on the part of Mr.

Henderson, as well as negligence and injury to persons and property in connection with a

construction contract between the parties.[7] Also included in the motion, as amended, are various

statements allegedly made by Mr. Henderson at the meeting of creditors conducted on November

3, 2008. According to the Scheidelmans, the Debtors have "acted in bad faith in making false,

baseless, malicious, bad faith and fraudulent declaration." *See* Motion at ¶ 30. Specifically, they

allege that the Debtors "deliberately, designedly, knowingly creat[ed] false security claims," citing

*In re Grogan*, 300 B.R. 804 (Bankr. D.Utah 2003). The Scheidelmans also assert that the homestead

exemption should be denied because the requisite period for ownership, which they allege is 40

---

[7] Dr. Scheidelman states that they are seeking "only to deny the debtors the Homestead
Exemption" in this motion and not an award of summary judgment in the adversary proceeding. *See*
Amended Motion at ¶ 70.

5

months, has not been met.  The Scheidelmans contend that the Residence was purchased by the

Debtors on August 19, 2004, and the Petition was filed on February 8, 2008.

Debtors take the position that the Scheidelmans have provided no "legally cognizable

justification for the relief sought." *See* Response in Opposition, filed June 24, 2009 (Dkt. No. 215),

at ¶ 2.  Debtors argue that "for a properly claimed exemption to be disallowed, there must be a nexus

between the alleged misconduct and the claimed exemption." *Id.* at ¶ 5.  The Debtors assert that the

Scheidelmans' allegations of wrongdoing by the Debtors are totally unrelated to their claim of a

homestead exemption and, if true, are more appropriately addressed in the context of the pending

adversary proceeding.

**DISCUSSION**

As an initial matter, the Court is unable to find any statutory basis for the Scheidelmans'

assertion that the requisite period of ownership/occupancy of the Debtors' Residence is 40 months

before the Debtors are entitled to claim their homestead exemption.    In their Reply, the

Scheidelmans  indicate that the 40 months residency requirement is set forth at Code § 522(1b)(3)

(*See* Reply at ¶ 15).  It is the Court's belief that the actual Code section is § 522(b)(3)(A), as best

it can determine.   That particular section was amended in 2005 "to extend, from 180 days to 730

days, the time period in which a debtor must be domiciled in order to use the forum state's

exemption laws." *In re Urban*, 375 B.R. 882, 889 (9th Cir. BAP 2007).

In support of their argument, the Scheidelmans state that the Debtors purchased the

Residence on August 19, 2004.  Upon review of the documents before the Court, the Court finds

nothing to support that assertion, except for NBT's proof of claim, which indicates that the mortgage was executed on August 19, 2004.  Even if the allegations are true and the Debtors occupied the Residence as of August 19, 2004, that is clearly more than the 730 days (24 months) referenced in the statute and more than 40 months, as alleged by the Scheidelmans, that have elapsed prior to the date on which they filed their Petition, namely February 8, 2008.  Accordingly, the Court concludes that there is no basis to deny the homestead exemption on that basis.

More important is the issue of whether there is a legal basis for the Court to deny the homestead exemption based on the Scheidelmans' allegations of bad faith and fraud.  In *In re Koss*, 319 B.R. 317 (Bankr. D.Mass. 2005), cited by the Debtors, the court cautioned that "[a]ny use of [§] 105(a) to disallow or surcharge a debtor's exemptions should be made cautiously.  For example, where a debtor intentionally conceals estate property . . . ." *Id.* at 323; *see also In re Woodford*, 403 B.R. 177, 190 (Bankr. D.Mass. 2009) (stating that "'the shield of exemption may be penetrated in extraordinary circumstances where there is fraudulent conduct or a clear showing of bad faith.'" (quoting *Pinco v. Bogan (In re Pinco)*, 302 B.R. 524, 529 (Bankr. W.D.Pa. 2003)).

A similar observation was made by the court in *In re Magosin*, 75 B.R. 545 (Bankr. E.D.Pa. 1987), a case cited by the Debtors for the statement in *dicta* that "certain fraudulent conduct could taint an exemption related to fraud which has a direct connection with the exemption challenged." *Id.* at 548-49.  In *Magosin* the creditor argued that the debtors should be denied their homestead exemption, which served as a basis for the debtors' seeking to avoid the creditor's judicial lien.  Its argument was based on the fact that one of the debtors failed to list or claim exemptions in certain equipment in which the creditor asserted a security interest.  The court held that the "contention that a debtor is guilty of fraud in claiming certain exemptions which is not proven to have any direct

7

relationship to the avoidance of the liens in question is totally irrelevant to the determination of lien

avoidance pursuant to Code § 522(f)(1)." *Id.* at 547.

The Scheidelmans are correct in their assertion that the holding in *Magosin* involved an issue

of lien avoidance.  However, the *Magosin* court's recognition that there be a direct relationship

between any alleged fraud and the particular exemption claimed by a debtor, while stated as *dicta*

in the case, does lend support to the Debtors' contention that there must be some sort of nexus

between any alleged fraud and the claim of a homestead exemption before it can be denied.[8]

Ultimately, the Court's focus rests on whether the Scheidelmans have established

"extraordinary circumstances," as referenced in *Woodford*, 403 B.R. at 190, with respect to the

Debtors' claim of a homestead exemption that warrant its denial or whether the allegations are more

appropriately addressed in the context of the pending adversary proceeding commenced by the

Scheidelmans in which they seek the denial of the Debtors' discharge or the nondischargeability of

any debt owed to the Scheidelmans.[9]

The Court has reviewed the cases cited by the Scheidelmans in support of their motion.  In

*In re Murray*, 249 B.R. 223 (E.D.N.Y. 2000), a creditor had commenced an adversary proceeding

---

[8] The Scheidelmans "parenthetically" point out that *Magosin* was "disapproved" by *Menell v. First Nat'l Bank (In re Menell)*, 37 F.3d 113 (3d Cir. 1994), *In re D'Amelio*, 142 B.R. 8 (Bankr. D. Mass. 1992); *In re Jones*, 166 B.R. 657 (Bankr. N.D.Ill. 1994).  However, the "disapproval" expressed in those cases was one of disagreement as to the steps to be taken in determining whether to grant a motion seeking to avoid a judicial lien.  All of those cases arose prior to the Bankruptcy Reform Act of 1994 when Code § 522(f)(2)(A) was added to provide a straightforward formula for determining whether a lien impaired an exemption and, therefore, have no relevance to the matter herein.

[9] Indeed, a review of the Scheidelmans' brief, filed on May 21, 2009 (Dkt. No. 193), reveals that pages 8-10 are devoted to arguments based on Code § 727(a)(3), (4), and (6), which are the subject of their pending adversary proceeding.

8

pursuant to Code § 727(a)(4)(A) seeking the denial of the debtor's discharge.  The district court, *inter alia*, considered the fact that the debtor had listed his 401(k) annuity in his schedules as having a zero value when it contained approximately $99,000 and he had actually obtained a recent loan of $8,000 from the 401(k).  By listing the asset as having a value of zero, the court viewed this to be a "non-disclosure"of an allegedly exempt asset by the debtor as being material to its determination of whether to deny the debtor a discharge. *Id.* at 230.  Ultimately, the court concluded that the debtor should be denied a discharge.  *Id.* at 232.  The district court agreed with the bankruptcy court that the fact that the "debtor had repeatedly, intentionally lied at trial was relevant to the issue of fraudulent intent in filing false schedules" and concluded that the "[d]ebtor's numerous false oaths necessitate a denial of discharge pursuant to 11 U.S.C. § 727(a)(4)(A)." *Id.* at 233; *see also In re Ayers*, 25 B.R. 762 (Bankr. M.D. Tenn. 1982).

In *Ayers* the court first considered objections to the debtors' discharge, as well as objections to the dischargeability of a debt of one of their creditors.  The court initially determined that none of the plaintiffs' objections to the discharge of the debtors was well founded and granted the debtors their discharge.  *Id.* at 771.  The court then considered the issue of nondischargeability of the debt owed to First National Bank of Pikeville, Tennessee, pursuant to Code § 523(a)(2)(A), (4) and (6), and determined that the debt was dischargeable.  *Id.* at 778.  The court then dismissed the trustee's request for denial of their exemptions, which was based on allegations of actual fraud, because the plaintiffs had failed to establish that the debtors were guilty of fraud.  *Id.*  In addition, the court indicated that it "would also dismiss the trustee's objection on the basis that the alleged actual fraud was unrelated to the exemptions."  *Id.* .

The Court believes that the analysis found in *Murray*, as well as *Ayers*, is much more

appropriate for consideration in the context of the Scheidelmans' adversary proceeding, rather than in the context of their objection to the Debtors' homestead exemption. This is particularly true given the fact that the Scheidelmans have made no allegations that the Debtors concealed or otherwise acted fraudulently with respect to the property for which they have claimed a homestead exemption. The Residence was listed as an asset on Schedule A, and the Debtors claimed a $100,000 exemption in the Residence on Schedule C pursuant to § 5206(a) of New York Civil Practice Law and Rules.

This is quite different from the situation described in *United States v. Bartels*, 2006 U.S. Dist. LEXIS 17188 (D.Vt. April 6, 2006), also cited by the Scheidelmans. In that case, the debtor lied at a deposition and fraudulently attempted to exempt a ski chalet in Mount Holly, Vermont, as his domicile/homestead despite the fact that he resided in the New York metropolitan area. *Id.* at *1-2. The trustee was forced to re-open the bankruptcy proceedings approximately a year after the trustee had determined that there were no non-exempt assets and the debtor had received a discharge. The trustee commenced an adversary proceeding alleging that the debtor had fraudulently exempted an interest in the Vermont property. The matter was settled with the debtor paying $18,290 to the estate for the benefit of his creditors. *Id.* at *2.

So too in *Grogan*, another case cited by the Scheidelmans, the debtor had failed to disclose the settlement proceeds she had received from a personal injury settlement shortly before filing, as well as the bank account into which the proceeds had been deposited. *See Grogan*, 300 B.R. at 805. The trustee sought turnover of the proceeds and in response, the debtors amended their schedules to list  the settlement proceeds as an asset in their case and claimed them as exempt property. *Id.* at 806. The bankruptcy court sustained the trustee's objection to the claim of exemption, finding that the debtors were "not entitled to a claim of exemption on an asset which they knowingly

10

concealed and failed to disclose in their Original Schedules and then later attempt to claim as exempt." *Id.* at 807.

The court in *Grogan,* relying on *Calder v. Job (In re Calder)*, 973 F.2d 862 (10ᵗʰ Cir. 1992),[10] found that "an amendment that claims an exemption may be denied upon a clear and convincing showing of bad faith by the debtor or prejudice to creditors." *Grogan*, 300 B.R. at 807.  The court in *Grogan* observed that "intentional concealment of an asset raises heightened concerns regarding good faith.  Courts in other jurisdictions have consistently held that intentional concealment of assets bars the debtor's exemption claim after the assets are uncovered." *Id.* at 808 (citations omitted); *see also In re Wood*, 291 B.R. 219 (1ˢᵗ Cir. BAP 2003) (sustaining an objection to the debtor's claim of exemption after it was learned that she had failed to list a potential workers' compensation claim for which she received an award of $25,000 in settlement proceeds postpetition).

The Scheidelmans, in their Reply at ¶ 8, assert that *Wood* "is exactly on point" with respect to assertions made in their brief and identified as "Cause 6" that the Debtors' homestead exemption should be denied based on "bad faith, false statements and false oath."  According to the Scheidelmans, the Debtors' "concealment of the New York State Workers' Compensation Board Claims" switched this case from an asset case to a non-asset case.  *See* Reply at ¶ 8.

In their schedules, the Debtors listed a claim of $348.67 as being owed to the New York State Workers Compensation Board.  The Debtors clearly gave notice to the Workers Compensation Board of their case and, based on that notice, the Workers Compensation Board took exception to

---

[10]   In *Calder* the debtor sought to claim additional exemptions listed in his proposed amendment to his schedules after the chapter 7 trustee established that the funds were actually property of the estate.  The court in *Calder* held that an amendment to the schedules may be denied upon a showing of bad faith on the part of the debtor or prejudice to the creditors.  *Calder*, 973 F.2d at 867.

the amount listed by the Debtors and filed a proof of claim on February 22, 2008, in the amount of

$62,657.  In the view of the Court, had the Debtors intended to conceal the debt they would not have

listed the Workers Compensation Board as a creditor and provided the Board with notice of the

bankruptcy filing.

The Court finds that these facts, as alleged by the Scheidelmans, are in no way comparable

to those described by the court in *Wood*.  In that case, it was not the compensation board that was

alleging a claim against the debtor.  Instead, it was the debtor that had a potential workers

compensation claim, which she failed to identify as an asset in her case.  The court found that she

had intentionally failed to disclose the asset, which would have inured to the benefit of creditors in

that case.  Therefore, the court disallowed her claim to an exemption in the settlement proceeds

based on her nondisclosure of the asset.  In the matter under consideration, there have been no

allegations that the Debtors had a potential claim against the Workers Compensation Board that was

not listed as an asset.  Rather, it was the Workers Compensation Board that had a claim against the

Debtors.

This Court finds no fault with the observations and conclusions found in *Grogan.*  As

previously observed, several cases cited by the Scheidelmans address the denial of an exemption

because the assets were not initially disclosed by the debtors and the courts believed the

nondisclosure evidenced a fraudulent intent with respect to their creditors.  However, with respect

to the matter presently under consideration and, as observed previously, there have been no

allegations that the Debtors concealed their interest in any assets, including their Residence for

which they have claimed a homestead exemption.  The allegations of bad faith in connection with

the claim of the New York State Workers Compensation Board, as discussed above, are without

12

merit and, in addition, have no nexus or relevance to the Debtors' claim of a homestead exemption. The Court also finds no relevance between the Debtors' claim of a homestead exemption and the Scheidelmans' arguments that certain claims were incorrectly identified as secured, rather than unsecured, as well as their assertions that certain actions by Mr. Henderson were criminal or negligent and caused them personal injury. The Scheidelmans have not cited to any cases in which an exemption was denied under those circumstances. The Scheidelmans will have an opportunity to prove the truth of many of those allegations by offering the testimony of witnesses and documentary proof in the context of the adversary proceeding in which they seek to have their debt determined to be nondischargeable or, in the alternative, that the Debtors' discharge be denied.

Based on the foregoing, it is

ORDERED that the Scheidelmans' objection to the Debtors' claim of a homestead exemption is denied.

Dated at Utica, New York

this 7th day of August 2009

   /s/ *Diane Davis*
DIANE DAVIS
U.S. Bankruptcy Judge